OPINION OF THE COURT
William B. Braatz, S.
In this proceeding the three children of decedent David T. Henken’s first marriage, Jonathan Henken, Mariamne Henken Whatley and Elissa Ruth Henken, seek an order annulling the election by the surviving spouse of decedent, Patricia V. Henken, to take against his will. They base their application upon a document containing what purports to be a waiver by David T. Henken and Patricia V. Henken, then Patricia Rubenstein, of the respective rights of each to make *13 any claim against the other’s estate. The only will in existence at the time of decedent’s death predates his marriage to Patricia V. Henken, and no codicil or other document has been discovered which provides for his widow.
David and Patricia Henken were married on or about June 20, 1971. Some time prior to that date, and on or about June 14 and/or June 15, 1971, the Henkens signed an instrument purporting to waive the surviving spouse’s statutory right of election. The widow admits as much in her answer to the petition. At the time of the signing, however, the instrument was not "acknowledged or proved in the manner required by the laws of this state for the recording of a conveyance of real property”, as mandated by EPTL 5-1.1 (f) (2), nor had it been so acknowledged at decedent’s death.
Two other signatures appear on the copy of the instrument proffered at trial: those of Frank DeAngelis and Jody Rubenstein. Frank DeAngelis testified during the petitioners’ direct case, largely inconclusively, about his signature’s appearance on the document. He was not able to testify that the Henkens either signed the document in his presence or that he was told by either of them that the signatures which may have been affixed at the time of his own signing — or may not have been; he was equivocal on the point — were theirs.
No original of the document has been produced, nor was any extensive explanation offered during petitioners’ direct case concerning the location of the original.[1] There was some indication that two originals had been signed, that the decedent "never threw away anything” and that decedent and one of the petitioners, Jonathan Henken, were the only ones who had access to decedent’s safe-deposit box. Jonathan Henken did not, however, give any testimony concerning his attempts to locate what is likely to have been a document important enough to have been kept in the safe. The court also takes judicial notice of the fact that although the respondent was served with a subpoena duces tecum demanding she produce the original document, she produced only a mechanically reproduced version. It is not clear whether this copy is the one offered for admission at trial. No testimony was adduced, however, to the effect that respondent ever retained an origi *14 nal of the document. Although the court is only marginally satisfied that a foundation for the introduction of secondary evidence of the contents of the writing was properly laid, it will, nonetheless, for the purpose of focusing on the most significant issue, presume that the introduction of a mechanically reproduced copy shall suffice.
The ultimate issue in this case is whether or not an ante-nuptial agreement waiving the surviving spouse’s right to election against the will of the decedent, which has not been acknowledged in the form required by EPTL 5-1.1 at the time of a decedent’s death, may thereafter be acknowledged by the surviving spouse or other witnesses to the execution of the agreement. The resolution of the issue turns upon the nature of a surviving spouse’s right of election, and the time at which such a right attaches, as well as the fundamental equities of a given fact pattern.
Two cases affirmed in the Court of Appeals, without opinion,' and standing in sharp contrast to one another, discuss this area. Matter of Maul (176 Misc 170, affd 262 App Div 941 [4th Dept 1941], affd without opn 287 NY 694 [1942]) involved an antenuptial agreement executed in accordance with the predecessor section of EPTL 5-1.1. The widow had executed an instrument, concurrently with the execution by decedent of a codicil to his will providing for the widow, waiving the widow’s right of election. No certificate of acknowledgement had been attached, as required by the Decedent Estate Law, but two witnesses’ signatures appeared after the widow’s signature on the document.
At the trial held in Maul, one of the witnesses was able to testify that the waiver was signed by the widow in his presence, and gave the information about himself required by Real Property Law § 304 for execution of a conveyance. (Matter of Maul, 176 Misc 170, 171, supra.) After hearing this testimony, the Surrogate affixed a certificate of acknowledgement, and determined that the widow had waived her right of election. (Real Property Law §§ 291, 292, 298, 306.) The Surrogate was most concerned with interpreting the relationship between the Decedent Estate Law and Real Property Law, with respect to what Real Property Law requires for proof of the execution of a conveyance.
In affirming the decision of the Erie County Surrogate in Maul (supra), the Fourth Department relied on a similar, narrow, reading of the issue before it. The court determined *15 that the instrument waiving the widow’s right of election "was proved by a subscribing witness” creating "compliance with the requirement of subdivision 9 of section 18 of the Decedent Estate Law, that such instrument should be 'duly acknowledged.’ ” (Matter of Maul, 262 App Div 941, 942, supra.) Judge Harris, in dissent, construed the words " 'duly acknowledged’ ” and " 'so executed’ ” "as requiring a statement by the signer of the instrument made before a proper officer that such instrument was executed with a full knowledge of, and acquiescence in, the contents and purpose of the instrument.” (262 App Div, supra, at 942.)
In the other major case in this area, Matter of Warren (16 AD2d 505 [2d Dept 1960], affd without opn 12 NY2d 854 [1962]), the court determined that the widow’s right to elect against the decedent’s will had not been effectively waived in the separation agreement she admitted she had signed, because the instrument had not been acknowledged in proper form. In reaching this decision the Second Department distinguished Maul (supra) by noting that the surviving spouse — as opposed to one of the subscribing witnesses in the case before the Maul court — was being required to furnish the acknowledgement. (16 AD2d, supra, at 508.) Additionally, the court noted that there is authority against the proposition that a Surrogate, or other official, may compel such acknowledgement from a party (supra, at 508). Finally, and perhaps most importantly, the court indicated that "the question of whether a surviving spouse has a right to elect against the deceased spouse’s will should be tested as of the time of the deceased’s death.” (Supra, at 508.)
Justice Hopkins dissented, indicating that his reading of the amendment to the statute requiring acknowledgement was that the waiver itself, only, was to be executed during the parties’ lifetimes. "Acknowledgement”, in his view, has the limited purpose of proving the identify of the person who signed a document and that the same person’s signature is authentic. Looking at the facts before the court he noted that "form is elevated above substance * * * the widow executed a waiver of her right of election, obtained material benefits as a result, and yet seeks to secure a further share from her estranged husband’s estate.” (16 AD2d, supra, at 511.)
It is clear that both the Maul and Warren courts, were, in the final analysis concerned with what was equitable given the facts of the cases before them. In Maul (supra) the very concurrence of the execution of the waiver and .the will *16 providing for the widow, and the formality of securing witnesses to the execution, clearly persuaded the court that such was the intent of the parties. The Warren court, in contrast, had before it an agreement which had not been subscribed by witnesses or acknowledged during the deceased spouse’s lifetime: formalities which assure the trustworthiness of a waiver of such an important statutory right.
This court agrees with the majority in Warren (supra) that a surviving spouse’s entitlement to elect against the will of a deceased spouse should be determined as of the date of death. If at that time there exists a valid waiver of this right, as specifically provided for under EPTL 5-1.1, then the spouse is precluded from such election. This view accords with notions of equity and good sense. In Matter of Held (24 AD2d 506 [2d Dept 1965]), the Appellate Division confirmed its earlier decision in Warren. It held that since the separation agreement containing a waiver of his right of election had not been acknowledged prior to his deceased spouse’s death, and the question of whether or not a right to elect exists is tested at the time of death, the surviving spouse could elect to take against his deceased spouse’s will despite his admission that he had signed the agreement. The facts recited in the reported decision in Held do not indicate whether or not there were any witnesses to the agreement.
The surviving spouse’s statutory right to an elective share, is "designed to provide for the proper support of a wife after the death of her husband” and should be "liberally construed.” (Matter of Stoeger, 17 AD2d 986, 987 [2d Dept 1962].) That right attaches at the moment of a decedent’s death. Accordingly, this court finds that the respondent, Patricia V. Henken, has a valid right to elect to take against the decedent’s will. No proper acknowledgement of the purported 'waiver of her right to elect existed at the time of David Henken’s death. This is true even under the apparently more liberal standards of Maul (176 Misc 170, affd 262 App Div 941, affd 287 NY 694, supra), since the witness who, in theory, would provide the basis for attaching a certificate of acknowledgement, was equivocal.
The testimony of Frank DeAngelis, the alleged subscribing witness in this case, did not provide this court with any of the foundation conceived, of by the Maul court. He could not remember when he signed, what signatures were on the document when he signed it and if in fact there were any signatures on the document when he signed it. Mr. DeAngelis *17 did not witness anything. Even if he had, this court could not find, given its position that the right of election attaches at death, that an acknowledgement of a purported waiver of the right after the deceased spouse’s death conforms with the law and equity.
Finally, in consideration of the apparent intention of the decedent to provide for his wife, and her contributions to the marriage both financially and emotionally, as evidenced by the testimony of their friends,[2] the court cannot be unaware of the equities of the situation. Although it alone has not formed the basis of the decision herein, such information concerning the general relationship between the decedent and his wife demands fairness far more than the situation where purported waivers of the right to election occur in the context of a separation agreement.
Accordingly, the petition is denied in all respects.

. The respondent’s contention that its present absence — when it apparently was last in the possession of the decedent — leads to a presumption that the decedent destroyed it, is without merit. Such a presumption, narrowly applied, is relevant only when a missing will is at issue. (Matter of Griffiths, 38 Misc 2d 87, affd without opn 20 AD2d 624 [2d Dept 1963].)

. Such testimony is not precluded by the "Deadman’s Statute” (CPLR 4519), which prohibits testimony by interested parties concerning conversations with the deceased, since the witnesses were not "interested” and the testimony concerned the decedent’s so-called "state of mind”.